ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| **SUGEI DE LOS SANTOS SÁNCHEZ y MARÍA V. GÓMEZ VÁZQUEZ**<br><br>Apelantes<br><br>v.<br><br>**TEXAS DE BRAZIL, CHURRASCARIA PR CORPORATION h/n/c TEXAS DE BRAZIL CHURRASCARIA & STEAKHOUSE; UNIVERSAL INSURANCE COMPANY; Demandados Desconocidos JOHN DOE, RICHARD DOE y MARY DOE**<br><br>Apelados | KLAN202301085 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan**<br><br>Civil Núm.: **SJ2022CV03656**<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Cintrón Cintrón, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 28 de febrero de 2024.

Comparece ante nos la señora Sugei De los Santos Sánchez y la señora María V. Gómez Vázquez (apelantes) y solicitan la revisión de la *Sentencia* emitida el 8 de octubre de 2023, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante la misma, el TPI declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por Texas de Brazil, Churrascaría PR Corporation y Universal Insurance Company (Texas de Brazil, Churrascaría PR y Universal o apelados) y desestimó la *Demanda* sobre daños y perjuicios presentada por las apelantes.

Por los fundamentos que expondremos, se confirma la *Sentencia* apelada.

Número Identificador
SEN2024_____

# I.

Surge del expediente que, por hechos ocurridos el 21 de julio de 2021, las apelantes presentaron una demanda en daños y perjuicios contra los apelados Texas de Brazil, Churrasquería PR y su aseguradora. En la demanda, alegaron que visitaron el restaurante Texas de Brazil ubicado en San Juan, y que luego de consumir unos cortes de carnes, la señora De los Santos Sánchez comenzó a sentir dolor de estómago e inflamación. Además, arguyeron que como consecuencia de lo anterior, el 22 de julio de 2021, acudieron en ambulancia al Hospital Menonita de Caguas en donde estuvo hospitalizada por 5 días. Señalaron que la señora De los Santos Sánchez tuvo padecimientos estomacales por un periodo de 6 meses, por lo que solicitaron al foro primario daños y perjuicios ascendientes a $100,000.00 para la señora De los Santos, así como $10,000.00 para la señora Gómez Vázquez en concepto de daños y angustias mentales. Texas de Brazil, Churrasquería PR y Universal instaron sus respectivas alegaciones responsivas oportunamente.

Mediante *Moción de Sentencia Sumaria*, presentada en conjunto por Texas de Brazil, Churrasquería PR y Universal , estos solicitaron al TPI que, al no existir un nexo causal que fundamentara la causa de acción de las apelantes, procedía desestimar el pleito mediante un procedimiento sumario.[1] Lo anterior, porque alegaron que surge del testimonio de las apelantes, que antes de cenar en Texas de Brazil, estas consumieron emparedados de jamón, queso y mayonesa, junto a un café con leche en el Casino del Hotel Sheraton. Además, adujeron que del Informe Pericial preparado por el perito de las apelantes, el Dr. Manuel J. Pérez Pabón (Dr. Pérez-Pabón),

---

[1] Los documentos presentados como anejos a la *Moción de Sentencia Sumaria* fueron los siguientes: (1) Deposición de la señora María Virgen Gómez Vázquez, (2) Deposición de la señora Sugei de Los Santos Sánchez, (3) Declaración Jurada del señor Joshua Álvarez, Ex Gerente General de Texas de Brazil, (4) Informe Pericial del Dr. Manuel J. Pérez-Pabón, (5) Deposición del Dr. Manuel J. Pérez Pabón y (6) Food Safety; Poisoning Symptoms del Centers for Disease Control and Prevention.

surge que este no podía descartar con certeza médica que los emparedados consumidos en el casino fueran la causa de la condición digestiva de la señora De los Santos Sánchez. Señalaron que el hecho de que la señora De los Santos Sánchez comenzara a sentir sus malestares estomacales cuando se encontraba en Texas de Brazil, no abría la puerta de responsabilidad civil extracontractual automáticamente contra el restaurante, en particular cuando admitieron haber consumido otros alimentos minutos antes de entrar al restaurante.

El 30 de mayo de 2023, las apelantes se opusieron al petitorio de Texas de Brazil, Churrasquería PR y Universal y alegaron que estos fueron negligentes al brindarles unos cortes de carnes que no estaban bien cocidos. Lo anterior, pues el consumo de dichos alimentos le causó a la señora De los Santos dolor estomacal, mareos, vómitos, diarreas, deshidratación severa e inflamación intestinal, y como consecuencia tuvo que acudir de emergencia al Hospital Menonita de Caguas, siendo diagnosticada con intoxicación alimenticia producto de comida contaminada.[2] A su vez, adujeron que aun existía controversia en cuanto al alimento que le provocó la intoxicación a la señora De los Santos Sánchez, en cuanto a la hora y el lugar en que se consumieron los alimentos y sobre la causa directa de la intoxicación, por lo que el foro primario no debía acoger la solicitud de sentencia sumaria presentada por Texas de Brazil, Churrasquería PR y Universal.

Evaluadas ambas posturas, el 8 de octubre de 2023, el foro primario emitió *Sentencia.* En ésta, desestimó la demanda de epígrafe y concluyó que Texas de Brazil, Churrasquería PR y Universal lograron establecer que no hubo un nexo causal entre el

---

[2] Los documentos presentados como anejos a la *Oposición a Moción de Sentencia Sumaria* fueron los siguientes: (1) Declaración jurada de la señora Sugei de Los Santos Sánchez, (2) Declaración jurada de la señora María V. Gómez Vázquez y (3) Informe Pericial del Dr. Manuel J. Pérez-Pabón.

consumo de la señora De los Santos Sánchez y los daños reclamados, al ésta comer distintos cortes de carnes en el aludido restaurante. Además, que el perito de las apelantes admitió que no conocía que éstas habían ingerido otros alimentos previos a los cortes de carne que comieron en Texas de Brazil y que, por tanto, la señora De los Santos Sánchez pudo haberse intoxicado con otros alimentos. El TPI formuló las siguientes determinaciones de hechos de las cuales no existe controversia, que, por la pertinencia de las mismas, se transcriben a continuación:

1. Texas de Brazil es un restaurante ubicado en el Sheraton Hotel and Casino en San Juan, Puerto Rico.
2. Texas de Brazil tenía vigente una póliza de seguros con Universal bajo el número 09-560-0006325672/200.
3. El 21 de julio de 2021, De los Santos Sánchez y Gómez Vázquez fueron al Sheraton Hotel and Casino a eso de las seis de la tarde.
4. Mientras estaban en el área del casino, De los Santos Sánchez y Gómez Vázquez consumieron café con leche y emparedados de jamón, queso y mayonesa.
5. A eso de las siete y treinta de la tarde, De los Santos Sánchez y Gómez Vázquez fueron al restaurante Texas de Brazil que se ubica dentro del mismo hotel, justo al lado del Casino.
6. De los Santos Sánchez consumió una ensalada, camarones y unos cortes de carne en Texas de Brazil.
7. María V. Gómez Vázquez, solamente consumió cordero y carne de cerdo en Texas de Brazil.
8. Durante la madrugada del 22 de julio de 2021, De los Santos Sánchez fue llevada en ambulancia, acompañada de Gómez Vázquez a la Sala de Emergencias del Hospital Menonita de Caguas.
9. Se ingresó a De los Santos Sánchez por cinco días en el Hospital Menonita en Caguas, siendo diagnosticada con enterocolitis.
10. Conforme al sistema de registros de visitantes de Texas de Brazil hubo 238 comensales el 20 de julio de 2021. El día del alegado incidente, el 21 de julio de 2021, hubo un total de 213 comensales. En ningún de los dos dias se reportó incidente de envenenamiento o indigestión, exceptuando el que se recibió con la demanda de epígrafe.
11. En ningún momento, Sugei de los Santos se cercioró si su corte de carne estaba a su gusto antes de ingerirlo.
12. La alegación de Sugei de los Santos de que la carne estaba cruda está basada exclusivamente por la información que le proveyó su amiga, María V. Gómez. En su deposición, Sugei de los Santos contestó:

"R: La que se percata que estaba cruda fue mi amiga y ya yo me la había comido, porque yo fui la primera que comí la comida. Y ella fue la que se percató de que la carne estaba cruda, pero ya yo me había comido.
P: ¿Y cómo sabe que la carne estaba cruda, si ya usted se la había comido?
R: Porque ella vio... cuando vio el corte, ya yo me había comido, que la notó cruda.
P: ¿Y usted no la notó cruda?
R: No.
P: Usted ha dicho aquí bajo juramento, usted se cerciora que la carne que le sirven a usted tiene que estar cocida, y usted me esta diciendo que en esas tres instancias la de la carne uno, la carne dos, y la carne tres, usted no tomó esa precaución.
R: Lo que sucede es que ya yo me la había comido y yo asumí que estaba bien cocida. Y ahí fue que me hizo daño."

13. El Dr. Manuel J. Pérez-Pabón, perito de la parte demandante, rindió un Informe Pericial el 24 de enero de 2023. En su Informe concluye lo siguiente: "los síntomas experimentados por las demandantes al terminar de comer en el Restaurante Texas de Brazil fueron la causa de una intoxicación alimenticia debido a comida contaminada con microorganismos. La presentación casi inmediata después de terminar de comer y menor de 12 horas antes de aparecer los primeros síntomas de náuseas y vómitos apuntan a la alta posibilidad de contaminación de la comida ingerida (carnes, ensaladas, productos lácteos, arroz) con Estafilococo Aureus o Cacillus Cereus."

14. Al momento de formular su escrito pericial, el Dr. Pérez-Pabón no estaba enterado que las demandantes habían consumido café con leche y unos emparedados de jamón, queso y mayonesa minutos previos a su visita a Texas de Brazil.

15. Al informarle al perito que tanto Sugei de los Santos y María V. Gómez Vázquez que ambas habían ingerido un emparedado de jamón, queso y mayonesa, poco antes de entrar al restaurante Texas de Brazil, este indicó que no podía descartarse la certeza médica de que dichos emparedados pudieran ser la causa de la condición digestiva de Sugei de los Santos.

16. Según la literatura utilizada por el Dr. Pérez-Pabón en su opinión pericial, el Center for Disease and Control ("CDC") identifica como una de las causas comunes para el envenenamiento, conocido como Estafilococo Aureus, es la ingesta de emparedados.

En desacuerdo con la antedicha decisión, el 25 de noviembre de 2023, las apelantes instaron una moción de reconsideración.

Analizado el escrito, el 3 de noviembre de 2023, el TPI emitió una

*Resolución* en la cual declaró No Ha Lugar la solicitud de reconsideración.

Aún inconforme con la determinación del foro primario, el 4 de diciembre de 2023, las apelantes acudieron ante este Tribunal de Apelaciones. Mediante su recurso, alegan que el foro primario cometió los siguientes errores:

> Primer Señalamiento de Error: Erró y abusó de su discreción el TPI al aplicar y evaluar incorrectamente como lo hizo la parte demandada-recurrida, la fuente más común de envenenamiento citando el Center For Desease Control and Prevention (CDC) que utilizó en su informe pericial el perito de la demandante, Dr. Manuel Pérez Pabón.

> Segundo Señalamiento de Error: Erró y abusó de su discreción el TPI al en la vista de Conferencia con Antelación al Juicio celebrada el 20 de junio de 2023, cuando tenía todas las herramientas para decidir la sentencia sumaria presentada por la parte demandada-recurrida, optó por marcar la prueba documental que utilizarían ambas partes en el juicio, exhortó a las partes a que trataran de resolver este pleito por la vía transaccional, señaló el juicio en su fondo presencial para los dias 17 y 18 de enero de 2024, comenzando a las 10:00 de la mañana y ordenó que la prueba documental se presentara al TPI no más tarde del 9 de enero de 2024.

> Tercer señalamiento de error: Erró y abusó de su discreción el TPI al fundamentar su sentencia basado en que la demandada Texas de Brazil estableció sin que fuera controvertido, que el día antes del incidente el restaurante tuvo 238 comensales y el día de los hechos el 21 de junio de 2021, hubo un total de 213 comensales y durante esos (2) días la única persona que reportó el incidente fue la demandante. Cuando lo cierto es que por el contrario, la parte demandada no presentó como anejo de la Moción de Sentencia Sumaria las hojas de las listas de comensales en el restaurante Texas de Brazil para los días 20 y 21 de [j]unió de 2021, ni dichas listas de comensales forman parte del cuerpo de la Moción de Sentencia Sumaria, ni fueron presentadas a la parte demandante como parte del descubrimiento de prueba.

> Cuarto señalamiento de error: Erró y abusó de su discreción el TPI al declarar ha lugar la moción de Sentencia Sumaria presentada por la demandada-recurrida aun cuando la parte demandante-peticionaria le demostró al TPI que existían dudas sobre unas controversias de hechos y al no considerar que todos los hechos presentados debieron verse de la forma más favorable para la parte demandante-peticionaria, que se opuso a dicha moción y que dichas dudas requerían ser resueltas por el TPI en un juicio en su fondo.

El 18 de diciembre de 2023, los apelados presentaron su *Alegato de Oposición.*

Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A.**

La Regla 36 de Procedimiento Civil dispone el mecanismo extraordinario y discrecional de la sentencia sumaria. 32 LPRA, Ap. V, R. 36. El propósito principal de este mecanismo procesal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, por lo que puede prescindirse del juicio plenario. *Serrano Picón v. Multinational Life Insurance Company*, 2023 TSPR 118, resuelto el 29 de septiembre de 2023.[3] Los tribunales pueden dictar sentencia sumaria respecto a una parte de una reclamación o sobre la totalidad de esta. 32 LPRA Ap. V, R. 36.1; *Meléndez González v. M. Cuebas*, 193 DPR 100 (2015). La sentencia sumaria procederá si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demuestran que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de derecho, procede hacerlo. *González Meléndez v. Municipio Autónomo de San Juan y otros*, 2023 TSPR 95, resuelto el 24 de julio de 2023.

El promovente debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes sobre la totalidad o parte de la reclamación. 32 LPRA

---

[3] Véase, además: *Oriental Bank v. Caballero García*, 2023 TSPR 103, resuelto el 23 de agosto de 2023; *Ferrer et. al. v. PRTC*, 209 DPR 574, 580-581 (2022); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010).

Ap. V, R. 36.1; *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). La controversia sobre los hechos esenciales que genera el litigio tiene que ser real, no especulativa o abstracta. Es decir, tiene que ser de naturaleza tal que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. *Ramos Pérez v. Univisión*, supra, págs. 213-214, seguido en *Meléndez González v. M. Cuebas*, supra, pág. 110.

Nuestro ordenamiento civil y su jurisprudencia interpretativa dispone que se deben cumplir unos requisitos de forma los cuales deben satisfacerse al momento de presentar una solicitud de sentencia sumaria. Estos requisitos son: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria, (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del Tribunal; (5) las razones por las cuales se debe dictar sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

Por su parte, le corresponde a la parte promovida refutar dicha moción a través de declaraciones juradas u otra documentación que apoye su posición. Esto es, la parte que se opone debe proveer evidencia sustancial de los hechos materiales que están en disputa. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). El hecho de no oponerse a la solicitud de sentencia sumaria no implica necesariamente que ésta proceda si existe una controversia legítima sobre un hecho material. Sin

embargo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a 'demostrar que [tiene] prueba para sustanciar sus alegaciones'". La Regla 36.5 de Procedimiento Civil, dispone que de no producirse por parte del opositor una exposición de hechos materiales bajo juramento, deberá dictarse sentencia sumaria en su contra. 32 LPRA Ap. V, R. 36.5; *Ramos Pérez v. Univisión,* supra, págs. 215-216.

La Regla 36.4 de Procedimiento Civil, establece que, si no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la moción de sentencia sumaria, y por tanto, es necesario celebrar juicio, será obligatorio que el Tribunal en su dictamen determine los hechos esenciales sobre los cuales no haya controversia sustancial y aquellos que sí se encuentran genuinamente en controversia. 32 LPRA Ap. V, R.36.4

Cónsono con lo anterior, nuestro estado de derecho le impone y exige al TPI, exponer los hechos materiales y esenciales que están en controversia, así como los que no lo están, independientemente de cómo resuelvan una solicitud de sentencia sumaria. *Meléndez González v. M. Cuebas,* supra, pág. 117. Al evaluar la solicitud de sentencia sumaria, el juzgador deberá: (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria, los incluidos con la moción en oposición y aquellos que obren en el expediente judicial y; (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 913-914 (1994).

Por último, en *Meléndez González v. M. Cuebas,* supra, el Tribunal Supremo estableció el estándar de revisión que debe utilizar este foro apelativo intermedio al revisar denegatorias o

concesiones de mociones de sentencia sumaria. Conforme a ello, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Finalmente, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. *Meléndez González v. M. Cuebas*, supra, pág. 119.

**B.**

El Artículo 1536 del Código Civil de Puerto Rico de 2020, dispone que "[l]a persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo". 31 LPRA sec. 10801. Asimismo, para que surja la responsabilidad civil que regula el Artículo 1536, *supra*, la parte demandante deberá establecer: (1) la existencia del daño, (2) la ocurrencia del acto culposo o negligente del demandado, y (3) el nexo causal entre ese evento culposo o negligente y el perjuicio sufrido. *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 485 (2022); *López v. Porrata Doria*, 169 DPR 135, 150 (2006).

Nuestro Tribunal Supremo ha establecido que "la culpa o negligencia es la falta del debido cuidado que consiste esencialmente en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente y razonable habría de prever en las mismas circunstancias." *Cruz Flores et al. v. Hosp. Ryder et al.,* supra; *Valle v. ELA*, 157 DPR 1 (2002). La responsabilidad extracontractual se determina a base de la ley vigente en el momento en que ocurrió el acto u omisión que dio lugar

a dicha responsabilidad. Art. 1815 del Código Civil, 31 LPRA sec. 11720. El deber de previsión es el criterio central para que se adjudique responsabilidad por culpa o negligencia. *Cruz Flores et al. v. Hosp. Ryder et al.,* supra.

Es importante destacar que el deber de previsión no se extiende a todo riesgo posible, mas bien, se debe examinar si un daño pudo ser el resultado natural y probable de un acto negligente. Es decir, se debe evaluar si después del suceso, ponderado retrospectivamente, tal daño aparece como la consecuencia razonable y ordinaria del acto que se alega fue negligente. *Íd.*; *Hernández Vélez v. Televicentro,* 168 DPR 8-3. 831 (2006); *Valle v. ELA,* supra.

### III.

Por estar íntimamente relacionados, discutiremos en conjunto los señalamientos de error. En el caso ante nuestra consideración, en esencia, las apelantes intentan establecer que existe controversia sobre las determinaciones de hechos establecidas por el TPI. En lo especifico, arguyen que la solicitud de sentencia sumaria presentada por los apelados se basa principalmente en una apreciación errónea de lo declarado por el Dr. Pérez-Pabón en su deposición. Asimismo, señalan que su declaración sobre los alimentos consumidos y la hora en la cual fueron consumidos, crean una controversia de hechos toda vez que el Dr. Pérez-Pabón declaró que no tenía manera científica de determinar cuál fue la causa de la intoxicación, si el consumo de los emparedados en el casino o las carnes del restaurante Texas de Brazil. Por lo anterior, concluyen que, por haber controversia sobre cual alimento causó la intoxicación el juzgador de los hechos debió resolver el asunto luego de aquilatar prueba testifical y documental en un juicio.

En el ejercicio de nuestra facultad revisora, solo podemos determinar la existencia de una controversia genuina de hechos

materiales y esenciales, y si el derecho se aplicó correctamente. Por ello, nuestra revisión es *de novo*.

Cónsono con lo anterior, el contenido, así como la forma de presentación de la *Moción de Sentencia Sumaria* presentada por Texas de Brazil, Churrasquería PR y Universal, cumple cabalmente con la Regla 36.3 de Procedimiento Civil, *supra*. En el escrito se hace una relación clara y concisa de los hechos que no están en controversia, haciendo referencia a la evidencia documental y pericial que lo sustenta. Entre los documentos incluidos se encuentran las deposiciones de las apelantes, el informe pericial realizado por el Dr. Pérez-Pabón, así como su deposición, y la declaración jurada del exgerente general del restaurante Texas de Brazil.

En su oportunidad para oponerse a la moción de sentencia sumaria, notamos que las apelantes establecieron una relación clara de los hechos que a su consideración estaban en controversia. Para ello, hicieron referencia a los párrafos de la moción de sentencia sumaria presentada por Texas de Brazil, Churrasquería PR y Universal, y presentaron como anejos los siguientes documentos: declaraciones juradas de las señoras De los Santos Sánchez y Gómez Vázquez y el informe pericial preparado por el Dr. Pérez-Pabón. Según las apelantes, aún existe controversia sobre cuál alimento fue el que causó la intoxicación y los daños reclamados en la demanda. A su vez, arguyen que también existe controversia sobre el lugar y la hora en que la señora De los Santos Sánchez consumió los alimentos que le causaron la intoxicación. Sin embargo, y a pesar de sus planteamientos, las apelantes no presentaron algún documento o evidencia que controvirtiera lo alegado por Texas de Brazil, Churrasquería PR y Universal en su moción de sentencia sumaria e incluso el informe pericial de su perito, el Dr. Pérez-Pabón, o que sostuvieran sus aseveraciones.

Basado en lo anterior, el TPI determinó que procedía la moción de sentencia sumaria por no existir hechos en controversia y al Texas de Brazil, Churrasquería PR y Universal, junto a los documentos anejados, probar que no fueron los causantes de los daños alegados en la demanda, que no hay un nexo causal entre el consumo de la señora De los Santos Sánchez y los daños al esta ingerir distintos cortes de carne en el restaurante Texas de Brazil. Además, determinó que el propio perito de las apelantes admitió que no conocía que éstas habían se habían comido unos emparedados de jamón y queso, previo a ingerir los cortes de carne del aludido restaurante.

En el caso que nos ocupa, debemos recordar que la parte promovida por una solicitud de sentencia sumaria no puede descansar meramente en las afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva. Por el contrario, está obligada a contestar de forma tan detallada y específica como lo hizo la parte promovente. 32 LPRA Ap. V, R. 36.3. Además, deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. Ante el incumplimiento de los apelantes con la Regla 36.3, *supra*, procedemos a analizar la solicitud de sentencia sumaria.

En cuanto al argumento de las apelantes respecto a que existe aun controversia sobre el alimento que provocó la intoxicación, y sobre el tiempo transcurrido desde el consumo de carne y la presentación de los síntomas, concluimos que no les asiste la razón.

De la deposición del Dr. Pérez-Pabón, perito de las apelantes, surge meridianamente claro que a la señora De los Santos Sánchez no se le ordenó la realización de pruebas especializadas que detectaran la bacteria que alegadamente fue la que provocó sus

malestares.[4] Asimismo, el Dr. Pérez-Pabón declaró que al momento de realizar su informe pericial, este desconocía que las apelantes habían consumido unos emparedados de jamón, queso y mayonesa en el Casino del Hotel Sheraton antes de consumir las carnes en el restaurante Texas de Brazil.[5] Además, como parte de su declaración, el Dr. Pérez-Pabón señaló que, asumiendo que el consumo de los emparedados no fue ocho (8) horas antes, sino que fue en un tiempo relativamente razonable cerca del consumo de carnes en Texas de Brazil, este no podía descartar que el origen de la intoxicación pudiera haber sido por los emparedados del casino, y que no había certeza médica de determinar qué alimento fue el que provocó la intoxicación en la señora De los Santos Sánchez.[6]

En vista de lo anterior, y luego de examinada cuidadosamente la totalidad de las comparecencias de las partes, los documentos anejados a la sentencia sumaria y su oposición, así como el derecho aplicable, procedemos a confirmar el dictamen del foro primario. No surge de la demanda, ni de la oposición a la sentencia sumaria, algún hecho demostrativo que establezca que Texas de Brazil, Churrasquería PR y Universal deben responder por la intoxicación de la señora De los Santos Sánchez por consumo de carnes crudas. De la evidencia provista por Texas de Brazil, Churrasquería PR y Universal surge que, aun cuando las apelantes acudieron al restaurante y consumieron otros alimentos, incluyendo las carnes que ofrecen, lo cierto es que, antes de ello, estas consumieron un emparedado en el Casino del Hotel Sheraton, por lo que, de acuerdo a la opinión pericial del Dr. Pérez-Pabón, no se podía precisar de

---

[4] Véase, Apéndice de la *Apelación*, Deposición del Dr. Pérez-Pabón, pág. 179, líneas 8-14.
[5] Véase, Apéndice de la *Apelación*, Deposición del Dr. Pérez-Pabón, pág. 182, líneas 1-17.
[6] Véase, Apéndice de la *Apelación*, Deposición del Dr. Pérez-Pabón, pág. 183, líneas 3-17 y pág. 184, líneas 1-25.

manera científica que alimento fue el que causó la referida intoxicación.

Así las cosas, concluimos que no procede la causa de acción objeto de la demanda, toda vez que no surgen hechos demostrativos que señalen que Texas de Brazil, Churrasquería PR y Universal debían responder extracontractualmente. Por lo tanto, colegimos que el foro primario no erró en su dictamen sumario, y procede confirmar la *Sentencia* apelada.

**IV.**

Por los fundamentos que preceden, se confirma la *Sentencia* apelada.

Lo acordó este Tribunal y lo certifica la Secretaría del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones